## Miller v. Cisco, Sp. Deputy Banking Com'r, et al.

June 23, 1939.

S. M. Ward, Judge.

Jesse Morgan for appellant.

J. W. Craft, M. K. Eblen, W. W. Reeves and E. C. Wooton for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

F. L. Cisco, special deputy banking commissioner and liquidating agent of the Perry Bank & Trust Company, instituted this action against Mahala Miller and her husband, W. H. Miller, seeking to recover judgment on notes in the sum of $6000, $4500, $394 and $463, respectively, subject to credits set out in the petition and to enforce a mortgage lien on a lot in the city of Hazard to secure the payment of the $6000 note and also a mortgage lien on a tract of about 50 acres of land adjoining the city of Hazard. These notes and mortgages were executed by the defendants to the Perry Bank & Trust Company prior to the time it was placed in the hands of the State Banking Commissioner for liquidation. During the pendency of the action, W. H. Miller died and there was an order of revivor in the name of his personal representative, Mahala Miller, who had been appointed administratrix of his estate, and his real representatives, a son, W. O. Miller, and a daughter; but the daughter was never brought before the court.

Mrs. Mahala Miller filed answer in which she alleged that she signed the notes sued on as surety for her husband while the marriage relation existed; that she joined in the notes and mortgages only for the purpose of perfecting the mortgage liens and received no part of the proceeds thereof. She further alleged that certain sums set out in the answer had been paid on the notes in addition to the amount set out in the petition and for which no credit had been given.

The Hazard Supply and Lumber Company and Bill Brown were made parties defendant and it was alleged that they were claiming to have a lien on the lands covered by the mortgage which was inferior to the liens of plaintiff and it was asked that they set up such lien claims, if any they had.

On final hearing it was adjudged that plaintiff recover of Mahala Miller, individually and as administratrix of the estate of W. H. Miller, deceased, the sum sued for, subject to credits set forth in the judgment and that plaintiff had a mortgage lien on the city property securing the $6000 note and on the tract of land adjacent to Hazard to secure the $4500 note; that neither

of the tracts could be divided without materially impairing its value. A sale of the property to satisfy the indebtedness was directed to .be made by the Master Commissioner, after the time, place and terms of the sale had been advertised by written or printed notices, one at the front of the courthouse and one on each of the two tracts described . in the judgment and three others at public places in the vicinity of the property, at least fifteen days immediately preceding the sale and also in a weekly newspaper published in Hazard for three consecutive weeks immediately preceding the sale.

The property was sold on November 23, 1936, and thereafter the commissioner filed a report wherein it was stated that after duly advertising the property as to the time, place and terms of the sale as directed in the judgment, it was exposed for sale and F. L. Cisco, for the plaintiff, being the highest bidder, became the purchaser of tract No. 1 for the highest bid of $7000 and W. O. Miller became the purchaser of the other tract at the highest and best bid of $3000, but no bonds were executed. The Hazard Lumber and Supply Company and Bill Brown were also given judgments for the amounts alleged or shown to be due them and they were adjudged liens inferior to that of plaintiff. No question is made concerning the correctness of the judgment in those particulars. It was recited in the judgment that it appeared from the record that there were delinquent taxes against the property ordered sold for a number of years in favor of the state, county and the board of education of the city of Hazard, all of which or a .certain part thereof were liens against the property but the exact amount of which the court was unable to determine; that the commissioner therefore should sell the two tracts subject to the tax liens against them as well as any street improvement tax liens and that the purchaser be required to assume such tax liens and street improvement liens in addition to the amount of his bid; that the amount of tax and street liens, if any, might thereafter be determined by the court if necessary. Mahala Miller, individually and as administratrix of her deceased husband, W. H. Miller, is appealing.

It is first argued by counsel for appellant that the judgment should be reversed because the court erred in giving a personal judgment against Mahala Miller, Mrs. Miller testified positively that she was not a principal on the $6000 note but that she merely signed it as sure-

ty for her husband. There is no evidence whatever that she was not principal on the other notes sued on, or that she was merely surety. A deed from her husband to her for the property, mortgaged to secure the $6000 note, shows that she assumed that indebtedness. By such assumption she became personally and primarily liable and her assumption agreement inured to the benefit of the mortgagee. See Commonwealth Life Insurance Company v. Eline, 274 Ky. 539, 119 S. W. (2d) 637 and cases therein cited. Mrs. Miller claims that she knew nothing about the provisions of this deed but the proven facts and circumstances and inferences necessarily arising therefrom clearly indicate otherwise and without going into further detail it is sufficient to say that the evidence amply supports the chancellor's finding concerning her personal liability.

Mrs. Miller claims that she was entitled to $150 credit on one of the notes and her evidence shows that this sum was paid as of a certain date; however, it appears from the record that this sum was credited as of the date referred to on another of the notes, so she apparently got the benefit of that credit. She further pleaded and testified that she sold two small parcels of the tract mortgaged to secure the $4500 note and took notes from the purchasers in the sums of $2000 and $1000, respectively, and that by agreement and understanding with the bank she assigned and transferred these notes to it to be applied as payment on the $4500 note. The evidence shows that no such credit was given and the mortgage was not released. Officials who were in the bank at the time of this transaction testified that they did not agree to accept these notes as payment on the $4500 note but took them for collection with an agreement to apply the proceeds to the payment of that note. It does not stand to reason that the bank would have released its mortgage on the entire tract to secure the $4500 note and accept lien notes on two very small portions thereof in satisfaction of the original note and mortgage. These and other proven facts and circumstances lead to the conclusion that the chancellor's finding that these notes were not accepted by the bank as payment on the $4500 note should not be disturbed.

It is further argued that the court erred in not adjudging that either or both of the tracts of land could not be divided without materially impairing their value; and that the property should have been sold in separate

parcels and then as a whole and the sale adopted which realized the most money; and further that only enough of the property should have been sold as would satisfy the indebtedness. It is shown that a valuable building is on one end of the lot in the city of Hazard and that there is a lot adjoining this building having a frontage of over 50 feet on a street. It appears that the lot on which the building stands and the vacant lot might have been sold separately and then as a whole to determine in which way the most would be realized. It further appears that the tract mortgaged to secure the $4500 note or a good portion thereof is underlaid with valuable seams of coal which had been leased and development started. Apparently the minerals and the surface should be sold separately and then as a whole and the method producing the most money adopted as the sale.

Mahala Miller filed exceptions to the commissioner's report of sale, one of the grounds of exception being that the commissioner failed to advertise the property as directed in the judgment in that he failed to post any written or printed handbills at the courthouse door or on or near the property as directed by the judgment and this exception is supported by an affidavit of W. O. Miller who stated that he was about the courthouse and the property sold every day prior to the sale and no notice of sale was posted at the courthouse or on or near the property. The commissioner was not called as a witness and there is no evidence or counter affidavits controverting the statements of the affidavit of W. O. Miller.

In the case of Mahala Miller v. Title Insurance & Trust Company, 278 Ky. 598, 129 S. W. (2d) 163, it is said:

"Unless contained in the order of the court, it is not necessary, under Section 696 of the Civil Code of Practice, or Section 14a-1 of the Statutes, that notices of judicial sales should be posted, the newspaper advertising being sufficient. But where such form of notice or manner of advertising is ordered by the judgment, a failure to observe such terms is fatal to the sale. Carter v. Howard, 183 Ky. 356, 209 S. W. 51; Ward v. Vanhoose, 222 Ky. 135, 300 S. W. 337."

In the circumstances revealed by the record the court erred in directing the land to be sold subject to tax liens for a number of years in favor of the state, county

and city and street improvement liens, without first determining the character and amount of the liens. If as is stated in the judgment the court could not determine the amount of the liens, certainly a prospective purchaser could not and the requirement that the purchaser should be required to assume such liens in addition to the amount of his purchase would unquestionably deter bidding and have a tendency to reduce the amount that might have been offered for the land. Other alleged irregularities complained of will not likely occur again.

Wherefore the judgment is reversed with directions to set aside the sale and for proceedings and judgment in conformity with this opinion.